IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAYMOND N.,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | 8:21CV429<br><br>MEMORANDUM<br>AND ORDER |

  Plaintiff Raymond N. ("Raymond") seeks judicial review of the final decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"), denying Raymond's claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* Before the Court are Raymond's Motion for an Order Reversing the Commissioner's Decision (Filing No. 17) and the Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 23). For the reasons below, the Court affirms the Commissioner's denial of benefits.

I.  BACKGROUND

  Raymond was born in 1976. He joined the Army after graduating high school, served on active duty for seven years, and then joined the Washington National Guard. He had multiple deployments, including to Bosnia, Kuwait, and Iraq. He occasionally received unemployment compensation between active-duty assignments. He also worked several civilian jobs during and after his military service, including at Walmart and a pizza restaurant. His most-recent job was as a chicken-processing production worker, which he held until June 2019.

  Raymond was diagnosed with multiple sclerosis ("MS") in 2016. As a result of his MS diagnosis, the military informed Raymond he could no longer lift or run and would be

limited to administrative tasks. He was honorably discharged in 2016 and retired in November 2018.

Raymond applied for a period of disability and disability insurance benefits on July 5, 2019, alleging a disability beginning June 20, 2019. The Social Security Administration ("SSA") initially denied his claim on January 23, 2020, and upon reconsideration on May 8, 2020. Raymond then requested a hearing with a SSA Administrative Law Judge ("ALJ").

Before the hearing, Raymond's primary-care provider, Jennifer Compton, APRN ("Compton"), provided the SSA with her professional opinions on Raymond's medical conditions and limitations. She described his MS prognosis as "progressive" and "poor," and detailed limitations on his ability to sit, stand, walk, or lift ten or more pounds. She noted he was only "capable of low stress work" because of a "combo [sic] of physical and mental limitations."

The ALJ held a teleconference hearing on October 7, 2020. Raymond was represented by an attorney, who explained Raymond suffers from multiple severe impairments, including his MS, for which he has "good and bad days;" degenerative disc disease and degenerative arthritis in his neck and shoulder; a hernia that limits his ability to lift more than ten or fifteen pounds; and post-traumatic stress disorder ("PTSD"), depression, and anxiety related to his military service.

Raymond testified that he was last employed in June of 2019, working in chicken processing and shipping. He was required to lift up to fifty pounds in that role. He left that job because of worsening issues with his MS and PTSD. His employer told Raymond he "could not return back to work until [he] had a psychological evaluation." He received a psychological evaluation around June 10, 2019, but did not return to work.

Because of his current medical conditions, Raymond testified he struggles to sit or stand in one place for more than thirty to forty-five minutes and needs to move in between.

2

He said he needs to lie down for several hours during the day two or three times per week for MS-related flareups, which include hot flashes followed by periods of exhaustion. He explained his MS episodes can last for several hours or the whole day. Raymond also said he suffers from daily leg tremors; dysphasia and trouble swallowing; vision issues; and pain in his shoulders, back, neck, and legs. He takes daily medication to control his symptoms and certain medication on an as-needed basis.

He further testified that his mental-health issues impact his life. He experiences "hypervigilance" as a symptom after his military combat experiences. He has flashbacks, where certain environments—including working around production machinery—trigger memories and cause increased anxiety. His anxiety results in panic, dizziness, and memory and concentration issues.

A vocational expert ("VE") also testified at the hearing. The ALJ asked the VE to "assume a hypothetical individual [with] the same age, education, and past work as [Raymond] with the [same] residual functional capacity ("RFC")." The VE testified that such a hypothetical individual could not perform any of Raymond's past relevant work but could perform other unskilled sedentary work. The VE pointed to document preparer, eye-frame polisher, and addresser jobs as representative occupations. In response to an additional hypothetical, the VE explained that any of those three jobs could also be performed by individuals sensitive to loud noise.

Upon questioning by Raymond's attorney, the VE stated, based on professional experience, that if a person misses two or more days a month on a regular basis, they would be unable to maintain competitive employment. He stated the same about individuals who would be off-task 10% or more of the day. He explained that any breaks exceeding a thirty-to-sixty-minute lunch break and two additional fifteen-minute breaks would be considered an accommodation and not competitive employment.

On December 28, 2020, after reviewing Raymond's records and consulting with several agency medical providers (the "SSA medical consultants"), the ALJ denied Raymond's claim. Raymond timely appealed, but on September 7, 2021, the Appeals Council denied his request for review. The ALJ's decision then became "the final decision of the [C]ommissioner." *See Kraus v. Saul*, 988 F.3d 1019, 1023 (8th Cir. 2021). Having exhausted his administrative remedies, Raymond now seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

## II.  DISCUSSION
### A.  Standard of Review

In reviewing the Commissioner's final decision, the Court "will affirm if substantial evidence supports" it. *Pierce v. Kijakazi*, 22 F.4th 769, 771 (8th Cir. 2022); *accord* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The threshold for substantial evidence is "not high." *Biestek v. Berryhill*, 587 U.S. ___, ___, 139 S. Ct. 1148, 1154 (2019). It is "more than a mere scintilla," *id.* at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), "less than a preponderance, but enough that a reasonable mind would find it adequate to support" the decision. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Gonzales v. Barnhart,* 465 F.3d 890, 894 (8th Cir. 2006)).

The Court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it" to decide whether substantial evidence supports the denial of benefits. *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The Court does "not reweigh the evidence," *Gonzales*, 465 F.3d at 894 (quoting *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)), and defers to the Commissioner's evaluation of credibility "as long as 'good reasons and substantial evidence'" support it. *Julin*, 826 F.3d at 1086 (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

"If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the

4

Commissioner's findings, the court must affirm the [C]ommissioner's decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In other words, the Court should "disturb the [Commissioner's] decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

### B. Eligibility for Disability Benefits

To qualify for disability under the Act, Raymond must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Pearsall*, 274 F.3d at 1217.

The ALJ determines disability using a five-step "sequential evaluation process." *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021) (quoting 20 C.F.R. § 404.1520(a)(4)). The ALJ considers

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). The claimant has the burden to show he is disabled through the first four steps. *See Moore v. Astrue*, 572 F.3d 520, 523. The steps are followed in sequential order, such that "[i]f it can be determined that a claimant is not disabled at a step, the ALJ does not need to continue to the next step." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)).

Here, the ALJ applied the five-step process following a teleconference administrative hearing. The ALJ first found at Step One that Raymond had "not engaged in substantial gainful activity since June 20, 2019, the alleged [disability] onset date."

At Step Two, the ALJ determined Raymond has multiple severe impairments, including multiple sclerosis, depression, anxiety, PTSD, osteoarthritis in his left shoulder, and cervical spondylosis, all of which "significantly limit [his] ability to perform basic work activities." The ALJ concluded at Step Three that Raymond's impairments and combination of impairments do not "equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."

The ALJ then moved to Steps Four and Five to determine whether Raymond can "perform 'past relevant work,' and if not, whether [he] can perform 'any other work.'" *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017). Making these determinations required the ALJ to assess Raymond's RFC, which is the most a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). RFC is determined "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his] limitations." *Kraus*, 988 F.3d at 1024 (quoting *Baldwin*, 349 F.3d at 556 (8th Cir. 2003)).

According to the ALJ, Raymond's RFC is as follows:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except he can never climb ladders, ropes, or scaffolds; and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can occasionally reach overhead with the left upper extremity. He can tolerate occasional exposure to extreme cold, atmospheric conditions, and hazards such as high exposed places and moving mechanical parts and no exposure to extreme heat. He can perform simple and routine work, and sustain concentration and persist at work tasks for two hours at a time with normal breaks in an eight-hour workday. He can tolerate a moderate noise intensity level[.]

Based on his RFC, the ALJ determined at Step Four that Raymond is unable to perform his past relevant work.

6

At Step Five, the burden shifted to the ALJ "to show there are other available jobs in the economy." *Moore*, 572 F.3d at 523. The ALJ found—relying, in part, on VE testimony—that there are jobs in significant numbers in the national economy that Raymond could perform with his particular RFC. The ALJ thus concluded Raymond "has not been under a disability, as defined in the [Act], from June 20, 2019, through the date of" the ALJ's decision.

### C. Issues on Review

Raymond seeks judicial review of whether the ALJ (1) erroneously relied on VE testimony after failing to identify and seek an explanation for an unresolved conflict, (2) erred by failing to include an instructions limitation in Raymond's RFC, (3) adequately developed the record, (4) properly assessed Raymond's credibility, and (5) was properly appointed.

#### 1. Step Five and Vocational Expert

Raymond first takes issue with what he characterizes as "the ALJ's explanation for favoring the [VE's] testimony despite SSR 00-4p issues" on Step Five of the sequential analysis. The ALJ relied on the VE's hearing testimony as evidence there are a significant number of jobs available in the national economy that Raymond could perform with his RFC. Raymond claims the VE failed to "recognize[] and explain[] an apparent conflict between the ALJ's hypothetical question and the jobs identified per the [Dictionary of Occupational Titles ("DOT")]." The Court disagrees.

The Eighth Circuit has held "when VE testimony conflicts with the DOT, the DOT controls if its classifications are unrebutted." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014). When that happens, "the VE's testimony does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Id*.

7

In other words, to be considered "substantial evidence," a VE's testimony "must be based on a hypothetical that captures the 'concrete consequences' of the claimant's deficiencies." *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). If VE testimony conflicts with information provided by the DOT, ALJs must "identify and obtain a reasonable explanation" for the conflict from the VE. SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). The ALJ must also "[e]xplain in the determination or decision how any conflict that has been identified was resolved" before relying on VE testimony to support a decision. *Id.*

During Raymond's hearing, the ALJ asked the VE a properly formulated hypothetical question about an individual with the same age, education, past work history, and RFC as Raymond. *See Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (stating an ALJ "may rely on a [VE's] response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers"). The VE testified the hypothetical individual could not perform Raymond's previous work but could perform certain sedentary work. The VE provided three examples of representative jobs: document preparer, addressor, or eye-frame polisher.

The ALJ determined Raymond has the RFC to perform sedentary work, including in the three representative occupations provided by the VE. The DOT describes each of these three occupations as requiring "frequent reaching." However, the ALJ also determined "[Raymond's] shoulder impairment reduces him to only occasional reaching overhead with the left upper extremity" (the "overhead-reach limitation"). To Raymond, this presents an apparent conflict, one which neither the VE nor ALJ "recognize[d] and resolve[d]."

In response, the Commissioner first contends the ALJ resolved any potential conflict during the hearing when she asked the VE if his testimony was consistent with the DOT. The VE confirmed the testimony was consistent. In the Commissioner's view, because the

8

ALJ's hypothetical individual had the same RFC as Raymond—including the same overhead-reach limitation—the VE's affirmative response resolved any conflict.

"[A]n ALJ must 'do more than have the [VE] affirm that his testimony was consistent with the [DOT]" in resolving a conflict. *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 559-60 (8th Cir. 2018) (quoting *Thomas v. Berryhill*, 881 F.3d 672, 678 (8th Cir. 2018) (explaining it is "longstanding precedent that an ALJ may not rely on unexplained [VE] testimony that someone with a particular RFC is qualified to do a job that the DOT describes as exceeding it")). "Instead, the ALJ must 'elicit from the [VE] an opinion whether there is a reasonable explanation for the conflict and determine whether the [VE]'s testimony warranted reliance despite the conflicting information in the [DOT].'" *Id*. (quoting *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014)).

The VE's affirmative response to the ALJ's question about whether his testimony was consistent with the DOT, standing alone, did not resolve the apparent conflict. It did not provide any explanation for the conflict nor address how the VE's experience provided a basis to rebut the conflict. *See Stanton*, 899 F.3d at 559-60 ("The [VE's] statement that his opinion was 'consistent with the DOT and his experience' was not a sufficient explanation, because it did not address whether or why the expert's experience provided a basis to overcome an apparent conflict with the [DOT]").

The Commissioner argues instead that the ALJ properly resolved the apparent conflict in her written decision. In her decision, the ALJ briefly stated,

> With respect to the [VE's] testimony regarding the impact of only occasional overhead reaching, the DOT does not directly address the direction of reaching and the [VE] relied on his experience in determining that an individual with that limitation could perform these jobs.

Though sparse, this explanation sufficiently resolves the apparent conflict. *See Grindley*, 9 F.4th at 631 ("[An] ALJ's brevity is not a reversible error."). The ALJ recognized the potential conflict and provided a reasonable explanation: the DOT broadly defines

9

"reaching" to mean reaching in any direction, *see Kemp*, 743 F.3d at 632, such that the representative occupations provided by the VE may not actually require overhead reaching. *See also Welsh v. Colvin*, 765 F.3d 926, 929–30 (8th Cir. 2014) ("SR 00–4p specifically provides that, in crediting VE testimony over a DOT listing, an ALJ may rely on '[i]nformation about a particular job's requirements . . . from a VE's . . . experience in job placement or career counseling.'")

Finally, Raymond's case is distinguishable from the reaching-limitation cases cited by Raymond. *See Moore*, 769 F.3d at 990 (reversing where the ALJ relied on VE testimony resolving this apparent conflict between a bilateral overhead-reach limitation and jobs requiring frequent reaching per the DOT); *Kemp*, 743 F.3d at 633 (reversing for failure to resolve apparent conflict where the claimant had an "occasional overhead reaching" limitation in both arms but occupations required "constant reaching"). As the Commissioner notes, Raymond's overhead-reach limitation only applies to his left arm. Thus, "if a job involved more than occasional overhead reaching, [Raymond] could have performed the additional overhead reaching activities solely with the right arm." In light of this, the Court finds the ALJ adequately resolved the apparent conflict with the overhead-reach limitation.

### 2. Mental Limitations

Raymond next argues the ALJ erred in failing to include a "detailed instructions" or "short/simple instructions" limitation (together, an "instructions limitation") in Raymond's RFC. The Commissioner, in turn, characterizes Raymond's position as an "attempt[] to create a conflict where none exists." On this issue, the Court also agrees with the Commissioner.

Two non-examining SSA medical consultants evaluated Raymond's mental limitations. Both Rebecca Braymen, Ph.D. ("Dr. Braymen") and Patricia Newman, Ph.D. ("Dr. Newman") determined Raymond's anxiety, depression, and PTSD pose "mild" limitations as to most functions, including understanding, remembering, or applying

information; interacting with others; and adapting or managing himself. They concluded he has "moderate" mental limitations related to concentration, persistence, or maintaining pace. Dr. Newman described all three of Raymond's mental-health conditions as severe, while Dr. Braymen characterized only his depression and anxiety as severe.

Additionally, both Dr. Braymen and Dr. Newman described Raymond's ability to follow "detailed instructions" as "moderately limited," while his ability to carry out "very short and simple instructions" was "not significantly limited." The ALJ found these assessments "generally persuasive" and "consistent with the evidence" that Raymond has "no more than mild to moderate limitations from his mental impairments."

Relying on *Gann*, Raymond avers the ALJ in the present case committed a "*Gann* error" by not including an instructions limitation in Raymond's RFC. In *Gann*, the Eighth Circuit determined an ALJ erred by failing to include certain impairments in both the claimant's RFC and the hypothetical posed to the VE. 864 F.3d at 953. In Raymond's view, because the ALJ admits she found the opinions of Dr. Braymen and Dr. Newman persuasive, and both of those opinions described Raymond's ability to follow detailed instructions as "moderately limited," the ALJ should have included an instructions limitation in Raymond's RFC or at least "offer[ed] some explanation for why it is missing."

The Commissioner contends the ALJ considered Raymond's "moderate concentration-related problems" in limiting Raymond "to simple and routine work despite the many normal mental status examination findings, conservative mental-health treatment, and robust daily activities." This is a more accurate reading of the record and the ALJ's decision, especially given the ALJ's obligation to "not defer or give any specific evidentiary weight, including controlling weight" to any particular medical opinions. 20 C.F.R. § 404.1520(c)(a). Substantial evidence supported the ALJ's RFC assessment regarding Raymond's mental limitations.

### 3. Development of the Record

Next, Raymond argues the ALJ failed to "fully and fairly develop[] the record." Raymond especially takes issue with the fact that the ALJ decided his claim "without the aid of any treating or examining opinions" other than Compton's opinion as Raymond's primary-care provider. This argument also fails.

An ALJ has a duty to "develop the record fairly and fully, independent of the claimant's burden to press his case." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)). Courts remand "for further development not only where evidence of functional limitations is lacking, but also where the record presents conflicting medical opinions as to which the Commissioner fails to explain a choice." *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020) (citing *Combs*, 878 F.3d at 646).

However, an ALJ "is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Grindley*, 9 F.4th at 629-30 (quoting *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010)). Although an ALJ's assessment must be supported "by some medical evidence of the claimant's ability to function in the workplace," *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)), it need not be supported by a specific medical opinion, *see id.* Reversal for failure to develop the record is only appropriate "where such failure is unfair or prejudicial." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (quoting *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir.1995)).

Raymond does not allege that any one issue is undeveloped but instead more generally asserts "the ALJ should have obtained a treating or examining opinion, or at least a medical expert opinion informed by the entire record"—particularly the opinion of a neurologist. The record broadly contains two types of medical opinions: those from Raymond's own primary-care provider, Compton, and those from various SSA medical consultants.

Compton opined that Raymond has extensive limitations necessitating broad workplace restrictions. For instance, she stated Raymond could walk less than one block without rest, could sit less than two hours in a workday, would need to walk every five minutes for a five-minute period, and would require absences from work more than four days each month. The ALJ found her medical assessment "unpersuasive," explaining it was "not supported by the evidence . . . [and] not consistent with the treatment examinations, or with the findings of the [SSA medical consultants]."

The SSA medical consultants reached a different conclusion, determining Raymond "could perform work at the light exertional level," with some additional limitations. The ALJ found their assessments "generally persuasive."

In developing the record, the ALJ considered both Compton's medical opinion as well as the SSA medical consultants' evaluations of Raymond's medical records. She provided explanations for why she did or did not rely on their respective conclusions. She also wrote in detail about the record, citing extensively to Raymond's medical and diagnostic examinations, treatment history, and mental and physical assessments. She discussed Raymond's testimony and subjective complaints, including his description of his daily activities. Thus, the ALJ developed every crucial issue in Raymond's case and was not required to seek an examining opinion from a neurologist or other medical provider.

### 4. Raymond's Testimony

Raymond additionally argues "[t]he ALJ did not provide good reasons for finding [Raymond] not credible in reporting his limitations." The Commissioner contends substantial evidence supports the ALJ's decision.

"[A]n ALJ cannot rely solely on objective evidence to adjudicate a claim for benefits but instead must evaluate all evidence—including a claimant's subjective evidence—in its determination." *Grindley*, 9 F.4th at 628 (citing *Rainey v. Bowen*, 814 F.2d 1279, 1281 (8th Cir. 1987)). However, an ALJ can determine that "subjective pain complaints are not

13

credible in light of objective medical evidence to the contrary." *Id.* at 630 (quoting *Jones*, 619 F.3d at 975). To evaluate subjective complaints, the ALJ considers "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions," along with the claimant's prior work history. *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017) (citing *Polaski*, 739 F.2d at 1322).

The ALJ considered Raymond's subjective complaints, including testimony about his pain, worsening MS symptoms, MS flareups, and mental-health impairments. Although the ALJ determined Raymond's various impairments could reasonably cause the symptoms Raymond described, the ALJ also explained that Raymond's "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record."

For instance, the ALJ considered that Raymond had "generally normal" mental-health evaluations despite "consistent complaints of mental health-related symptoms." Likewise, the ALJ noted although Raymond's medical reports show "slightly reduced strength on his left side" because of his MS and other physical impairments, Raymond "generally had full strength everywhere else," normal "ranges of motion," and at times even a "completely normal gait." The ALJ found this medical evidence contrary to Raymond's testimony about his physical limitations. Over several pages in her decision, the ALJ detailed numerous instances of inconsistencies between Raymond's subjective testimony and the objective medical record.

Further, the ALJ noted inconsistencies in Raymond's own statements. For example, despite describing severe mental and physical limitations, Raymond reported participating in daily activities like preparing meals, playing with his dog, vacuuming, playing chair volleyball at the senior center, driving, managing his savings account and bills, and mowing his lawn.

14

Although the SSA medical consultants determined Raymond could perform work at the "light exertional level," the ALJ nevertheless reduced Raymond's RFC to a "sedentary" level. She acknowledged that the reduction was made considering additional evidence, "including [Raymond's] testimony." Raymond's subjective complaints were thus fairly considered and factored into his RFC.

The ALJ properly evaluated Raymond's testimony given the discrepancies between the subjective complaints and the objective examination results. *See Pierce*, 22 F.4th at 772-73. Additionally, the ALJ did not need to give controlling weight to Compton's opinions supporting Raymond's subjective complaints since her opinions "contradicted substantial medical evidence in the record, including objective clinical testing." *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008). Because "good reasons and substantial evidence" support the ALJ's evaluation of Raymond's testimony, *Julin*, 826 F.3d at 1086 (quoting *Polaski*, 739 F.2d at 1322), the Court defers to the ALJ's determination.

### 5. Appointment of the ALJ

Raymond's final argument is that Nancy A. Berryhill ("Berryhill") was not properly serving as the Acting Commissioner on July 16, 2018, when she ratified the appointment of all ALJs, making the ratifications ineffective. Raymond argues, as a result, that his ALJ "remained improperly appointed when she issued [Raymond's] unfavorable decision." Raymond urges the court to remand the case "for a new hearing before a properly appointed ALJ."[1]

The statute at issue is the Federal Vacancy Reform Act ("FVRA"), 5 U.S.C. § 3345 *et seq.* The FVRA provides the means for an acting official to fill a

---

[1] Raymond attached three exhibits to his initial brief. Each of the three exhibits is a brief submitted by Raymond's attorney in another case advancing the same or similar arguments regarding the appointment of ALJ. These three exhibits contain eighty-six pages of additional briefing. The Court reviewed those exhibits but relies on the arguments advanced in Raymond's initial brief and reply brief, in addition to the Commissioner's briefing.

vacancy in an executive branch position that requires Presidential appointment and Senate confirmation. The FVRA prescribes the following time limits for acting officials serving under the FVRA,

> Except in the case of a vacancy caused by sickness, the person serving as an acting officer . . . may serve in the office—
>
> (1) for no longer than 210 days beginning on the date the vacancy occurs; or
>
> (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

5 U.S.C. § 3346(a). For vacancies existing in the first 60 days after a Presidential inauguration, the 210-day period runs from the later of 90 days after inauguration or 90 days after the vacancy date. *See id.* § 3349a(b).

Berryhill took office as Acting Commissioner on January 21, 2017, following the inauguration of President Donald Trump. She took office pursuant to a Presidential Memorandum issued by President Barack Obama which established an order of succession for SSA officials. *See Memorandum of December 23, 2016, Providing an Order of Succession Within the Social Security Administration*, 81 Fed. Reg. 96,337 (Dec. 30, 2016) (the "Presidential Memorandum"). The Presidential Memorandum specified that its provisions were subject to the limitations of the FVRA. President Trump did not change the line of succession described in the Presidential Memorandum before Berryhill's assumption of office.

Because Berryhill filled a vacancy existing at the time of President Trump's inauguration, she initially served as Acting Commissioner for a 210-day period under § 3346(a)(1), which began to run 90 days after the inauguration. That acting-service period expired on November 16, 2017.

16

On April 17, 2018, President Trump nominated Andrew Saul ("Saul") as commissioner. During the pendency of Saul's nomination, Berryhill resumed serving as Acting Commissioner, this time pursuant to § 3346(a)(2). Berryhill ratified the appointments of all ALJs on July 16, 2018, including the ALJ who presided over Raymond's case.

The parties agree there was no Acting Commissioner between November 16, 2017 and April 17, 2018. The core question is whether Berryhill properly served as Acting Commissioner during the period in which Saul's nomination was pending, beginning April 17, 2018. "This question turns on whether § 3346(a)(2) is a tolling provision or a 'spring-back' provision." *Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615, 629 (D. Minn. 2022). The issue is currently pending before the Eighth Circuit.[2]

According to Raymond, § 3346(a)(2) is a tolling provision. He argues that "[a]fter a lapse in authority under" § 3346(a)(1), if there was "no nomination prior to the lapse to trigger" § 3346(a)(2), then a "later Commissioner nomination"—one occurring after the § 3346(a)(1) lapse—cannot trigger § 3346(a)(2).

The reason, according to Raymond, is that § 3346(a) only applies to "the person *serving* as an acting officer." (Emphasis added). However, since § 3348(b)(1) requires "the office [to] remain vacant" if an agency officer[3] "fails to comply with §§ 3345, 3346, and 3347," Raymond argues the position should have remained vacant after the lapse in

---

[2]*See Brian T. D.*, 580 F. Supp. 3d 615 (D. Minn. 2022), *appeal docketed*, No. 22-1601 (8th Cir. March 22, 2022). Most district courts in the Eighth Circuit that have addressed the issue determined § 3346(a)(2) of the FVRA is a spring-back provision. *See*, *e.g.*, *Sidney M. v. Kijakazi*, No. C21-2034-LTS, 2022 WL 4482859, at *18 (N.D. Iowa Sept. 26, 2022); *Jamie K. v. Kijakazi*, No. 8:21-CV-373, 2022 WL 3577013, at *15 (D. Neb. Aug. 19, 2022); *Siedlik v. Kijakazi*, No. 1:21-CV-3 RP-SHL, 2022 WL 794692, at *19 (S.D. Iowa Mar. 7, 2022). However, the District of Minnesota has adopted Raymond's interpretation that it is a tolling provision. *See*, *e.g.*, *Richard J. M. v. Kijakazi*, No. 19-CV-827, 2022 WL 959914, at *10 (D. Minn. Mar. 30, 2022).

[3]This vacancy requirement only applies to agency officers appointed under U.S. Const. art. II § 2, cl. 2, with presidential appointment and Senate confirmation.

authority. In Raymond's view, since there should have been a vacancy after the lapse, there was no person "serving as an acting officer" at Saul's nomination, failing to trigger § 3346(a)(2). In other words, Raymond believes § 3346(a)(2) permits a person to serve during the pendency of a nomination *only* when the nomination occurs during the initial 210-day term under § 3346(a)(1).

The Commissioner disagrees, arguing § 3346(a)(2) is a spring-back provision which "springs" the Acting Commissioner back into service upon nomination of a Commissioner. In the Commissioner's view, § 3346(a)(2) permits an Acting Commissioner to serve during the pendency of a nomination "even when that nomination as submitted after the initial 210-day period" under § 3346(a)(1) expired.

Both sides present compelling arguments for their respective interpretations grounded in statutory interpretation, legislative history, and public policy concerns. The Court ultimately finds the Commissioner's argument more persuasive.

The plain text of the FVRA supports the Commissioner's interpretation. The Court agrees that the use of "or" between § 3346(a)(1) and § 3346(a)(2) in the FVRA "provides for acting service during either *or both* of two periods: (1) for 210 days after the vacancy; or (2) during the pendency" of a nomination. (Emphasis added). Put simply, the text of the statute does not require that a nomination be submitted within the initial 210-day period for § 3346(a)(2) to apply. Rather, the text simply states § 3346(a)(2) applies "once" the nomination "is submitted to the Senate."

Although Raymond characterizes the FVRA legislative history as "murky," the Court finds, on balance, that it also supports the Commissioner's reading of the statute.[4] The Commissioner points to the Senate Report attached to the bill that eventually became

---

[4] "Legislative history is properly consulted only in light of a textual ambiguity." *Olson v. Fairview Health Servs. of Minnesota*, 831 F.3d 1063, 1071 (8th Cir. 2016). The Court only considers the parties' legislative-history arguments given the ambiguity of the FVRA text.

the FVRA, which specifically stated an Acting Commissioner could serve both for the initial period and for the pendency of the nomination, "even if the nomination is submitted after the [initial period] has passed." S. Rep. No. 105-250, at 14 (1998).

As evidence of Congressional intent not to adopt a spring-back provision, Raymond contends Congress considered an express spring-back provision at one point but did not adopt it. Yet the Commissioner directs the Court to evidence that both the Legislative Branch's Government Accountability Office and the Executive Branch's Office of Legal Counsel "agree that § 3346(a)(2) permits acting service during the pendency of a . . . nomination without regard to when the nomination is submitted."

Finally, the Court is persuaded by the Commissioner's argument that adopting Raymond's interpretation could have "ramifications on the functioning of the [f]ederal [g]overnment" and result in an "administrative paralysis." Taken to its logical conclusion, Raymond's interpretation could prevent the President from naming acting officers for many important executive offices experiencing a vacancy, simply because the 210-day period already expired. Raymond's interpretation would also "force future Presidents to table other priorities" in order to submit executive officer nominees, "lest [the President] be locked out from having anyone perform the duties of those offices on an acting basis[.]"

Given these considerations, the Court finds Berryhill was validly serving as acting commissioner under the FVRA when she ratified the appointment of the ALJs. Raymond's ALJ was therefore properly appointed.[5]

In light of the foregoing,

---

[5] Raymond requests that if the Court "believes the plain language of the FVRA is ambiguous on the 'spring-back' issue, [it] should invite a supplemental brief from the [Commissioner] to respond to the constitutional issues involved discussed [sic] in the *Brian T.D.* briefing attached to [Raymond's] principal briefing." The Court declines to invite additional briefing on alleged constitutional issues.

IT IS ORDERED:

1. Plaintiff Raymond N.'s Motion for an Order Reversing the Commissioner's Decision (Filing No. 17) is denied.
2. Defendant Kilolo Kijakazi's Motion to Affirm Commissioner's Decision (Filing No. 23) is granted.
3. The Complaint (Filing No. 1) is dismissed.
4. A separate judgment will issue.

Dated this 1st day of November 2022.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge